[Docket No. 54]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ALL STAR LIGHTING SUPPLIES, INC., *et al.*,<br><br>Defendants. | Civil A. No. 25-12390 (RMB/EAP)<br><br><br>**OPINION** |

**APPEARANCES:**

TROUTMAN PEPPER LOCKE LLP
Cindy H. Chou, Esq.
Mark Hannemann, Esq.
875 3rd Avenue
New York, New York 10022
Admitted *pro hac vice*

Nicholas J. Gallo, Esq.
70 Linden Oaks, Suite 210
Rochester, New York 14625
Admitted *pro hac vice*

Stephanie L. Jonaitis, Esq.
104 Carnegie Center, Suite 203
Princeton, New Jersey 08540

> *Attorneys for Plaintiffs Jiaxing Super Lighting Electric Appliance Co., Ltd., and Obert, Inc.*

[Docket No. 54]

FINNEGAN, HENDERSON, FARRABOW, GARRET & DUNNER LLP
David Mroz, Esq.
901 New York Avenue, N.W.
Washington, D.C. 20001
Admitted *pro hac vice*

Lionel M. Lavenue, Esq.
1875 Explorer Street, Suite 800
Reston, Virginia 20190
Admitted *pro hac vice*

MORGAN, LEWIS & BLOCKIUS LLP
Amy M. Dudash, Esq.
2222 Market Street
Philadelphia, Pennsylvania 19103

Matthew Rizzolo, Esq.
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Admitted *pro hac vice*

> *Attorneys for Defendants All Star Lighting Supplies, Inc., d/b/a Luxrite, and Xiamen Pvtech Corporation*

**RENÉE MARIE, BUMB, Chief United States District Judge:**

This matter comes before the Court upon Defendant Xiamen Pvtech Corporation, Ltd.'s ("Pvtech's") Motion to Stay this litigation pending final resolution of the *ex parte* reexamination proceedings involving all patents asserted in this litigation: 11,519,567, 11,112,068, 9,945,520, 9,841,174, 10,378,700, 9,970,602, 11,499,682, 10,560,989, and 12,085,263 (together, the "Asserted Patents").[1]  [Def.'s

---

[1] On April 24, 2026, the parties filed a joint stipulation dismissing without prejudice the claim and allegations associated with the 11,906,115 ("'115") patent from the Amended Complaint. [Apr. 24, 2026 Stip. (Docket No. 102).]  The Court entered the Order the same day. [Order (Docket No. 103).]

2

[Docket No. 54]

Mot. (Docket No. 54).]  Since Defendant filed the present Motion, all requests for *ex parte* reexamination of all nine Asserted Patents have been granted by the United States Patent and Trademark Office ("USPTO"), such that all claims asserted in this action will be reexamined.  [Apr. 22, 2026 Notice (Docket No. 100).]

Plaintiffs Jiaxing Super Lighting Electric Appliance, Co., Ltd. ("Super Lighting"), and Obert, Inc. ("Obert") (together, "Plaintiffs"), have opposed the Motion. [Pls.' Opp'n (Docket No. 57).]  Defendant Pvtech submitted a reply in further support of its Motion, [Def.'s Reply (Docket No. 63)], as well as six notices to the Court providing updates on the status of Pvtech's requests for *ex parte* reexamination, [Notices (Docket Nos. 82, 83, 85, 92, 98, 100).]  On April 7, 2026, the Court held a Teams videoconference with all parties to discuss (1) Defendant Pvtech and Defendant All Star Lighting Supplies, Inc. d/b/a Luxrite's ("Luxrite", together with Pvtech, "Defendants") pre-motion letter concerning a partial motion to dismiss, and (2) Defendant Pvtech's present Motion to Stay.  [April 7, 2026 Minute Entry (Docket No. 93).]  Based on the current status of the *ex parte* reexamination proceedings and for the reasons set forth below, the Court will **GRANT IN PART** and **DENY IN PART** Defendant Pvtech's Motion to Stay.

## I.  FACTUAL BACKGROUND

This is a patent infringement case within the global lighting industry.  Plaintiffs allege that, together with their corporate parent, they serve as "an industry-leading manufacturer of commercial and industrial lighting" with "more than 2,100

3

[Docket No. 54]

employees worldwide." [Amend. Compl. (Docket No. 78) ¶ 6.] According to Plaintiffs, they offer "a full range of energy-efficient tube lighting products" and today represent "a significant supplier of LED [light emitting diode] tubes in the United States and the world." [*Id.* ¶ 6.] Plaintiff Super Lighting is the sole owner of all Asserted Patents in this suit, and Plaintiff Obert is the exclusive licensee of these Asserted Patents. [*See id.* ¶¶ 20, 21.]

According to Plaintiffs, Defendant Luxrite supplies infringing lighting products that Defendant Pvtech manufactures. [*See id.* ¶¶ 8, 9.] Plaintiffs allege they separately notified each of the Defendants of allegedly infringing products in 2023: on April 12, 2023, Super Lighting first notified Luxrite of certain infringing products sold by Luxrite via Amazon; on September 18, 2023, Plaintiffs notified Pvtech of its alleged infringement of two Asserted Patents via letter; and on October 31, 2023, Plaintiffs sent a second letter to Pvtech. [*Id.* ¶¶ 27, 36.] Initially, only Luxrite responded to Plaintiffs. [*Id.* ¶ 36]

Thereafter, Plaintiffs allege that they attempted to initiate a dialogue with Luxrite to resolve the alleged infringement through Amazon's Patent Evaluation Express procedure. [*Id.* ¶¶ 27–29.] From approximately June 2023 until March 2024, Super Lighting and Luxrite "exchanged many correspondences regarding product specifications and pricing[,]" but Luxrite "failed to provide any constructive response" and "instead continued to sell infringing tube lighting products." [*Id.* ¶ 35.]

[Docket No. 54]

In August 2024, Pvtech began to engage with Super Lighting directly, and all parties discussed their respective positions as to alleged infringement over the next several months. [*Id.* ¶¶ 40–49.] Until approximately March 2025, the parties disputed certain aspects of the alleged infringement, and at least one point discussed the potential for Defendants to license or cross-license certain of the Asserted Patents. [*Id.*] Ultimately, however, Plaintiffs allege that after multiple unsuccessful attempts at resolution, "Plaintiffs ha[d] no alternative but to file this litigation to stop Defendants' infringing activity." [*Id.* ¶ 52.]

## II. PROCEDURAL HISTORY

On June 30, 2025, Plaintiffs filed suit against Defendants Luxrite and Pvtech. [Compl. (Docket No. 1).] On July 16, 2025, Super Lighting executed service on Luxrite. [Executed Luxrite Summons (Docket No. 5)]. On September 12, 2025, Luxrite moved to stay this litigation pending service of process on its co-defendant, Pvtech, [Docket No. 31], which Plaintiffs opposed [Docket No. 37.] In its briefing, Plaintiffs argued that although Pvtech had "actual notice of the case since at least August 22, 2025, when Super Lighting emailed a translated copy of the complaint and claim charts to Pvtech[,]" Pvtech has "chosen to stand idly by on the platform and watch the litigation train pull away from the station" rather than waive service. [Pls.' Opp. to Def. Luxrite's Mot. to Stay (Docket No. 37) at 1–2.]

On September 16, 2025, counsel for Plaintiffs and Defendant Luxrite met before the Honorable Elizabeth A. Pascal to discuss the outstanding service issue. [Sept. 15,

5

2025 Text Order (Docket No. 34).]  Following the conference, the Court ordered Plaintiffs to complete necessary translations of all Asserted Patents for service on Pvtech via the Hague Convention and adjourned the initial conference until Luxrite's Motion to Stay was resolved.  [Sept. 16, 2025 Text Order (Docket No. 36).]  While Luxrite's motion remained pending, on November 13, 2025, Plaintiffs moved to effectuate alternative service of the summons and complaint on Defendant Pvtech, arguing that Luxrite should be ordered to accept service on Pvtech's behalf, in part because the same counsel represent both Luxrite and Pvtech in a different patent case. [Pls.' Br. in Support of Mot. for Alternative Service (Docket No. 40-1) at 3.]  On December 9, 2025, Super Lighting served the summons and complaint upon Pvtech via the Hague Convention and subsequently withdrew its Motion for Alternative Service.  [Executed Pvtech Summons (Docket No. 46); Ltr. Withdrawal (Docket No. 47).]  On December 29, 2025, the Court denied Defendant Luxrite's Motion to Stay as moot.  [Order (Docket No. 50).]

On January 9, 2026, Defendant Pvtech filed this Motion and one request for *ex parte* reexamination of the 10,378,700 ("'700") patent.  [Def.'s Mot.]  In the following weeks, Pvtech submitted additional requests for reexamination and periodically updated the Court on the status of these requests.  [*See* Notices.]  During the April 7, 2026 videoconference to discuss the Motion, the parties advised the Court that eight of the requests had been granted, expanded upon their Motion briefing, and alerted the Court to the risk of inappropriate forum-shopping in this litigation and other suits

[Docket No. 54]

across the country. [Minute Entry (Docket No. 93).] The Court ordered prompt follow-up via letter identifying the other suits filed by each party to this litigation, which the Plaintiffs provided on April 10, 2026. [Pls.' Ltr. (Docket No. 95).] On April 14, 2026, Defendants submitted a response asserting that "Plaintiffs' outlining is incomplete" and set forth additional arguments as to why Pvtech's Motion to Stay should be granted. [Defs.' Response (Docket No. 96).]

On April 22, 2026, Defendant Pvtech filed another notice advising the Court that the USPTO granted the last request for *ex parte* reexamination as to the 11,112,068 ("'068") patent, such that all Asserted Patents will be reexamined. [April 22, 2026 Notice (Docket No. 100).]

Having considered the parties' briefing, oral argument, and supplemental submissions, this Motion is now ripe for review.

### III.    LEGAL STANDARD

Although the Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings, Federal Rule of Civil Procedure 26(c) allows the Court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). It is well settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (citations omitted). "In the context of patent cases, courts have 'consistently

7

recognized the inherent power of the district courts to grant a stay pending reexamination of a patent.'" *Choon's Design LLC v. WeCool Toys Inc.*, No. 22-6424, 2024 WL 489567, at *2 (D.N.J. Feb. 8, 2024) (quoting *Procter & Gamble v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008) (further citations omitted)).

"The decision to stay proceedings requires an exercise of judgment, requiring courts to weigh the competing interests and hardships with respect to the movant and the non-movant." *Anglin v. Anglin*, No. 16-4049, 2020 WL 3496916, at *2 (D.N.J. June 29, 2020) (citations omitted). Motions to stay proceedings are committed to a district court's "sound discretion." *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976); *see also Tyler v. Diamond State Port Corp.*, 816 F. App'x 729, 731 (3d Cir. 2020) (reviewing district court's denial of motion to stay for abuse of discretion).

However, there is no *per se* rule governing motions to stay in patent cases. *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 15-4431, 2015 WL 7012747, at *5 (D.N.J. Nov. 12, 2015) ("But stays pending PTO reexamination of one or more asserted patents in a case are not automatic, as a stay in litigation inevitably causes further delay in an already lengthy process, and could potentially harm [the opposing party].") (internal quotations omitted). "In determining whether to stay a case pending reexamination of a patent, courts consider three factors: '(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and the trial of the case, and (3) whether discovery is complete

[Docket No. 54]

and a trial date has been set.'" *Choon's Design LLC*, 2024 WL 489567, at *2 (quoting

*Kirsch Rsch. & Dev., LLC v. GAF Materials, LLC*, No. 20-13683, 2021 WL 2434082, at

*3 (D.N.J. June 15, 2021) (further citations omitted)).[2]

The party requesting the stay bears the burden of showing that a weighing of

these factors justifies the Court's exercise of its discretion to stay. *Landis*, 299 U.S. at

255.

## IV.    DISCUSSION[3]

### A. *Ex Parte* Reexamination Proceedings

The Court notes at the outset that here, Pvtech moves for a stay of the litigation

pending final resolution of the *ex parte* reexamination proceedings before the USPTO.

Given the contrast between *ex parte* and other kinds of patent review proceedings, and

the likelihood these *ex parte* requests could increase in the near future,[4] the Court deems

---

[2]    Plaintiffs also assert that "the party seeking a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else[,]" citing to *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865, 2010 WL 5149351, at *2 (D. Del. Dec. 13, 2010), and in turn quoting *Landis*, 299 U.S. at 255. But "[n]owhere did the [*Landis*] Court state that a showing of hardship or inequity in proceeding with litigation is an absolute requirement for a stay." *Cooper Notification*, 2010 WL 5149351, at *2. Rather, "a showing of hardship or inequity is 'generally' needed to show that the balance of equities favors a stay" and "[n]o doubt . . . circumstances may arise in which the overall balance could be tipped in favor of a stay even if proceeding with the litigation will cause no undue hardship or prejudice to the party seeking a stay." [*Id.*] Such is the case here, as explained *infra*.

[3]    The Court focuses its Discussion on the parties' arguments that remain relevant now that the USPTO has granted all requests for *ex parte* reexamination.

[4]    Though none of the parties addressed this in their briefing, this Court acknowledges the recent increase in *ex parte* reexamination requests. "Ex parte reexamination filings have nearly tripled from their recent low point, rising from 163

[Docket No. 54]

it appropriate to distinguish the *ex parte* reexamination sought here from the more commonly-addressed *inter partes* review before proceeding with its analysis.

Congress established the *ex parte* reexamination process in 1980, well before the passage of the America Invents Act and its overhaul of the related, but distinct, *inter partes* review. *JLC-TECH, LLC v. Luminos Global, Inc.*, No. 25-15, 2026 WL 874403, at *1 (S.D. Cal. Mar. 27, 2026) (citing *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1345 (Fed. Cir. 2020)). While both *ex parte* reexamination and *inter partes* review are designed to review the patentability of a claim, the *ex parte* reexamination process allows "any person at any time [to] file a request for reexamination with the [USPTO] on the basis of any prior art." 35 U.S.C. § 302. "Within three months following the filing of a request for reexamination . . . , the [USPTO] will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request." 35 U.S.C. § 303(a). "A determination by the [USPTO] . . . that no substantial new question of patentability has been raised will be final and nonappealable." 35 U.S.C. § 303(c).

---

in fiscal year 2019 to 491 in fiscal year 2025." Ryan Schermerhorn, Greg Smith, and Matt Jorge, *Adapting to the Shift Toward Ex Parte Patent Challenges*, Law360, Apr. 16, 2026. "Meanwhile, [*inter partes*] filings and institution rates have plummeted. In fiscal years 2022 and 2023, petitioners filed 1,320 and 1,209 [*inter partes*] petitions, respectively, and saw institution rates of 66%-67%." *Id.* While the Court need not delve into this change, it is clear that this District and others are likely to hear more cases involving these *ex parte* proceedings going forward, and thus a detailed analysis of this type of reexamination is warranted.

If the Director finds a substantial new question of patentability and grants the reexamination request, the patent owner may, but is not required to, "file a statement on such question, including any amendment to his patent and new claim or claims he may wish to propose, for consideration in the examination." 35 U.S.C. § 304. The patent owner is afforded a "reasonable period, not less than two months from the date" the request determination was made to file this statement, and the third-party requester is then afforded the opportunity to respond within a reasonable time period. *Id.*

When the USPTO completes the reexamination process, it will "issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307(a). The patent owner may then appeal this decision to the Patent Trial and Appeal Board ("PTAB"), and then to the Court of Appeals for the Federal Circuit. 35 U.S.C. §§ 134(b), 141, 306. "All reexamination proceedings . . . , including any appeal to the [PTAB], will be conducted with special dispatch within the Office." 35 U.S.C. § 305.

Thus, "'[w]hen a patent claim is reexamined by the PTO, there are three possible outcomes - it can be cancelled as unpatentable, it can be confirmed as originally written, or it can be modified.'" *MonoSol Rx, LLC v. Biodelivery Scis. Int'l, Inc.*, No. 10-5695, 2015 WL 5679891, at *1 n.1 (D.N.J. Sept. 25, 2015) (quoting *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 505 (D. Del. 2012)).

Importantly, any claim cancelled or modified to cure invalidity via *ex parte* reexamination renders any pending infringement litigation before a District Court moot, such that the cancellation or amendment of claims binds any parallel, pending litigation in the District Court. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) (holding that "under either the reissue or reexamination statute, if the PTO confirms the original claim in identical form, a suit based on that claim may continue, but if the original claim is cancelled or amended to cure invalidity, the patentee's cause of action is extinguished and the suit fails."); *see also SHFL Ent., Inc. v. DigiDeal Corp.*, 729 F. App'x 931, 936 (Fed. Cir. 2018) (emphasizing that whether the amended claims moot earlier litigation "necessarily depends on whether those claims are substantially identical to the originally asserted claims"); *see also Merck Sharp & Dohme B.V. v. Aurobindo Pharma USA, Inc.*, 130 F.4th 1363, 1372 n.10 (Fed. Cir. 2025) (noting that "cancelled claims are treated as void *ab initio.*") (internal citations omitted).

### B. The Contrast Between *Ex Parte* Reexamination Proceedings and *Inter Partes* Review

*Ex parte* reexamination proceedings differ from *inter partes* proceedings in several important ways. First, unlike *inter partes* review, *ex parte* reexamination is typically non-adversarial: once the time by which the third-party may submit its response to the patent owner's statement has expired, it may not otherwise participate in the proceeding.

[Docket No. 54]

Further, unlike *inter partes* review, *ex parte* proceedings do not carry the same statutory estoppel effect. "The petitioner in an *inter partes* review of a claim in a patent under this chapter that results in a final written decision . . . may not assert either in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." 35 U.S.C. § 315(e)(2). This estoppel provision is absent from its *ex parte* counterpart, such that even if a claim is deemed valid by the USPTO, the third-party requester may raise the same invalidity arguments before the District Court that it raised or could have raised to the USPTO. However, as discussed *supra*, any decision by the Director to cancel a claim or amend it such that it is not identical to the original claim is still binding on pending litigation. Thus, although the *ex parte* reexamination lacks statutory estoppel, it can still narrow the issues before the District Court.

Finally, *ex parte* reexamination proceedings have historically taken longer to resolve than *inter partes* review. While "the PTO must decide whether to grant [*inter partes*] review within six months of a petition being filed, and must complete its review and issue a final determination within eighteen months[,]" *Nexans Inc. v. Belden Inc.*, No. 12-1491, 2014 WL 651913, at *2 (D. Del. Feb. 19, 2014), *report and recommendation adopted*, No. 12-1491, 2014 WL 1232218 (D. Del. Mar. 12, 2014), *ex parte* reexamination proceedings carry no such deadlines. According to recent USPTO statistics cited by the parties, the average pendency of an *ex parte* reexamination is 25.1

[Docket No. 54]

months.  [Exhibit 3, Def.'s Mot., *Ex Parte* Reexamination Filing Data (Docket No. 54-3) at 2.]

With this context, the Court proceeds with its analysis.

### C. Whether the Stay Will Simplify the Issues in the Case

As to the first factor, the Court must consider whether a stay would simplify the issues and trial of the case.  *See Nussbaum v. Diversified Consultants, Inc.*, No. 15-600, 2015 WL 5707147, at *3 (D.N.J. Sept. 28, 2015).  This factor weighs the most in the Court's analysis.  *See 3rd Eye Surveillance, LLC v. United States*, 160 Fed. Cl. 636, 641 (2022) ("Courts have considered the simplification question to be the one that bears the most on the appropriateness of staying a case.") (citing *TC Tech. LLC v. Sprint Corp.*, No. 16-153, 2021 WL 4521045, at *4 (D. Del. Oct. 4, 2021)).

As noted above, "reexamination may simplify the litigation by the cancellation, clarification, or limitation of claims which may dispense with the need to litigate whether [Pvtech] has infringed on [the Asserted Patents]."  *Robern, Inc. v. Glasscrafters, Inc.*, No. 16-1815, 2017 WL 132841, at *3 (D.N.J. Jan. 13, 2017) (quoting *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988)).  "When a claim is cancelled in a parallel proceeding before the PTO, 'the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot.'"  *Nexans Inc.*, 2014 WL 651913, at *4 (quoting *Fresenius USA, Inc.,* 721 F.3d at 1340).  "[T]he USPTO need not reject all of the asserted claims to justify the imposition of a stay here as the case will be simplified even if only some of the claims are

14

[Docket No. 54]

canceled." *Robern, Inc.*, 2017 WL 132841, at *4 (citing *Indus. Tech. Research Inst. v. LG Elecs. Inc.*, 2013 WL 5180108, at *8 (D.N.J. Sept. 12, 2013)).

Defendant argues that the reexamination proceedings will simplify the issues for trial because they "are likely to result in the cancellation or amendment of multiple asserted claims." [Def.'s Mot. at 9.] Defendant notes that, based on public historical data concerning same, "significant portions of the currently asserted claims and their terms are unlikely to survive *ex parte* reexamination" and "[t]his likelihood is even greater given that Pvtech has filed [and since filed] . . . reexamination requests challenging all claims across all [nine] Asserted Patents," which have now been granted for review. [*Id.*; *see also Ex Parte* Reexamination Filing Data (Docket No. 54-3) (noting that the USPTO either cancels all claims or issues reexamination certificates with changes to claims in 78% of *ex parte* reexamination proceedings); *see also* April 7, 2026 Hr'g Tr. (Docket No. 94) at 8:9-11 ("The statistics from the patent office are that 77 percent of claims that undergo *ex parte* reexamination, 77 percent are either canceled or modified.").]

Plaintiffs assert that this factor weighs against granting a stay because simplification is speculative, and any simplification "would not fully limit the issues" before the Court because Defendant will not be estopped from raising failed arguments from the *ex parte* proceedings [Pls.' Opp'n at 14–15, 18–19.]

Defendant replies that "simplification . . . is inevitable" based on historical statistics, and even if Defendant is not estopped from raising arguments in District

[Docket No. 54]

Court that failed before the USPTO, the review process will "add critical material facts and arguments . . . clarify the claim scope, and provide guidance on invalidity and infringement analysis" to aid the Court's determinations. [Def.'s Reply at 6.]

Here, the Court finds this factor weighs in favor of granting a stay. The Court agrees that simplification of some kind will occur by reexamination. As of the date of this Opinion, all requests for review have been granted, such that all claims associated with the Asserted Patents will face some kind of amendment, cancellation, or confirmation. [*See* April 22, 2026 Notice.] Based on historical data from the USPTO, nearly 80% of claims granted for review are either cancelled outright or otherwise amended, making it more likely that that the vast majority of Plaintiffs' pending infringement claims could be mooted in this case. [*Ex Parte* Reexamination Filing Data at 3.]

Further, contrary to Plaintiffs' argument, the reexamination need not "fully limit" the issues before the Court in order to simplify them: even if some claims are confirmed, the likelihood that many others will not still simplifies the issues before the Court. *See Robern, Inc*, 2017 WL 132841, at *4 ("the USPTO need not reject all of the asserted claims to justify the imposition of a stay here as the case will be simplified even if only some of the claims are canceled").

And although *ex parte* proceedings do not estop an unsuccessful challenger from raising the same invalidity arguments before the District Court, the USPTO's historical data show that this risk of duplication is likely limited to the roughly 22% of

claims ultimately confirmed by reexamination. [*Ex Parte* Reexamination Filing Data at 3.]; *see also Fresenius USA, Inc.*, 721 F.3d at 1340. And in analyzing those confirmed claims "the Court will have the benefit of the PTO's expertise and views on the prior art, which can help focus and streamline the Court's review of issues surrounding that art later in this litigation." *Ever Win Int'l Corp.*, 902 F. Supp. 2d at 506–07 (internal citations omitted); *see also Enhanced Sec. Research, LLC v. Cisco Sys., Inc.,* C.A. 09–571, 2010 WL 2573925, at *2–4 (D. Del. June 25, 2010) (granting motion for stay over plaintiffs' arguments that *ex parte* reexamination of one patent would not have preclusive effect on any of defendants' claims, due to the likelihood that the reexamination would result in simplification of prior art issues and invalidity defenses that were likely to be raised in the litigation). "Indeed, even if the PTO were to ultimately confirm all of the claims, the court would likely benefit from the expert analysis the PTO conducts, thus further simplifying issues before the court." *A.L.M. Holding Co., Ergon Asphalt & Emulsions, Inc., & Meadwestvaco Corp. v. Azko Nobel Surface Chemistry* LLC, No. 13-1069, 2014 WL 12717284, at *1 n.1 (D. Del. Sept. 17, 2014). "Finally, a stay will also avoid the complicating peril of this Court issuing inconsistent decisions." *Alcon Lab'ys, Inc. v. Akorn, Inc.*, No. 15-285, 2016 WL 99201, at *1 (D.N.J. Jan. 8, 2016) (citing *Eli Lilly and Co. v. Accord Healthcare Inc.*, No. 14-389, 2015 WL 8675158, at *2 (S.D. Ind. Dec. 11, 2015)).

For all of these reasons, the Court finds this factor weighs in favor of granting the motion to stay.

[Docket No. 54]

### D. **Whether the Stay Would Unduly Prejudice or Present a Clear Tactical Disadvantage to Plaintiffs**

With respect to the second factor, the Court considers "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Stryker Trauma S.A. v. Synthes (USA)*, No. 01–3879, 2008 WL 877848, at *1 (D.N.J. Mar. 28, 2008). Importantly, "delay inherent to the reexamination process does not constitute, by itself, undue prejudice." *CCP Sys. AG v. Samsung Elecs. Corp.*, No. 09-4354, 2010 WL 5080570, at *3 (D.N.J. Dec. 7, 2010) (internal citations omitted); *see also Nussbaum*, 2015 WL 5707147, at *2 ("Because delay results inherently from the issuance of a stay, courts have found that mere delay does not, without more, necessitate a finding of undue prejudice and clear tactical disadvantage.") (cleaned up).

"In analyzing this factor, the Court weighs whether disadvantages from any delay are outweighed by advantages of permitting the USPTO to complete its reexamination before proceeding with the case." *Robern, Inc.*, 2017 WL 132841, at *2. Courts consider "a number of subfactors for this prong, including, 'the timing of the request for reexamination, the timing of the request for [a] stay, the status of the reexamination proceedings and the relationship of the parties.'" *Batinkoff v. Church & Dwight Co.*, No. 18-16388, 2020 WL 5627252, at *2 (D.N.J. Sep. 21, 2020) (citing *Canfield Sci., Inc. v. Drugge*, No. 16-4636, 2018 WL 2973404, at *2 (D.N.J. June 13, 2018)).

#### a. **Whether the Timing of Pvtech's Requests Favors Granting the Stay**

18

[Docket No. 54]

"A request for reexamination made well after the onset of litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage." *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, No. 08-63, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010). However, a delay in filing the request does not alone establish a tactical disadvantage. *See Choon's Design LLC*, 2024 WL 489567, at *3 ("Nor does any delay in filing for reexamination show that there is a tactical disadvantage to the non-moving side.") (citing *CCP Sys. AG*, 2010 WL 5080570, at *3 (noting that a party waiting over eight months after filing its counterclaims before requesting reexamination "is not necessarily evidence of an improper delay")); *see, e.g.*, *In re Laughlin Prods., Inc., Patent Litig.*, 265 F. Supp. 2d 525, 532 (E.D. Pa. 2003) (reexamination request was timely even though reexamination requester knew of prior art for over two years).

Pvtech argues that the timing of these requests "do[es] not create any undue prejudice" because Pvtech promptly made the requests after Plaintiffs effectuated service of the complaint and before the parties exchanged discovery. [Def.'s Mot. at 6.] Plaintiffs assert that granting the stay will unduly prejudice them by severely delaying their case, and would "reward Pvtech's [d]ilatory [t]actics[.]" [Pls.' Opp'n at 7.] Plaintiffs allege that Pvtech strategically delayed filing these requests because, although it was not served until December 2025, Pvtech was "aware of this dispute and infringement of several of the Asserted Patents since early 2023." [*Id.*] Pvtech replies that only the timeline of the litigation controls under this factor, and even if the

19

[Docket No. 54]

Court considers the timeline of the dispute, Plaintiffs' argument fails because "[i]t was not until the dispute escalated into a litigation that the need to challenge the Asserted Patents arose[.]"  [Def.'s Mot. at 11.]

Although the Court is of the view that Pvtech should have acted sooner when it was clear this litigation was on the horizon, it is not so clear when that time occurred. All parties engaged in some form of pre-suit negotiations between approximately August 2024 and March 2025, [*see* Amend. Compl. (Docket No. 78) ¶¶ 40–49.], and certainly had those negotiations been successful there would have been no need to request *ex parte* reexamination.  However, while it is Plaintiffs' burden to timely effectuate service of the complaint, the Court does find it concerning that Luxrite's counsel refused to waive service on Pvtech's behalf and moved to stay the entire proceeding pending service, but then immediately after Plaintiffs effectuated service via the Hague Convention, counsel took up Pvtech's representation.  [Def. Luxrite's Sept. 12, 2025 Motion to Stay (Docket No. 31); Def. Pvtech's Dec. 24, 2025 Extension Request (Docket No. 48) (with counsel appearing on Pvtech's behalf, having already appeared for Luxrite).]  Given this conduct, Plaintiffs' point is a legitimate one.  Under these circumstances, while any perceived delay in filing for reexamination does not alone show a tactical disadvantage to Plaintiffs, here the Court finds this sub-factor

[Docket No. 54]

weighs against granting the motion to stay because Pvtech's delay in filing the requests is compounded by its other delays.[5]

### b.  Whether the Timing of Pvtech's Motion and the Status of the Requests Favor Granting the Stay

Plaintiffs' primary argument under these subfactors is that the risk of undue prejudice from delay is heightened here because *ex parte* proceedings require, on average, more than 25 months to complete.  [Pls.' Opp'n at 1 n.1, 8.]

Here, the Court finds that at this time, this sub-factor neither weighs strongly for nor against a stay.  The Court acknowledges that the *ex parte* proceedings at issue here do increase the risk of undue prejudice given the length of time required to issue a reexamination certificate and exhaust the appeals process.  [*Ex Parte* Reexamination Filing Data at 3 (showing that the average pendency of an *ex parte* reexamination is 25.1 months, before any appeal).]  In this respect, *ex parte* reexamination differs from *inter partes* review, and that distinction is not insignificant.  However, this average is not a crystal ball as to the exact circumstances that will unfold in this particular case: the reexamination could be completed much earlier.

---

[5]   The Court is unpersuaded by Plaintiffs' additional arguments that Pvtech's strategy of delay is further evidenced by its filing of a parallel suit in the Eastern District of Texas, [Pls.' Opp'n at 1, 4], and its decision to pursue *ex parte*, not *inter partes* review, [*see id.* at 2.]  Pvtech's parallel suit concerns different patents than those asserted here, and its decision to sue in the Eastern District of Texas does not alone suggest improper forum-shopping.  As to Pvtech's decision to pursue *ex parte* as opposed to *inter partes* review, Plaintiffs present no authority in support of their proposition that this decision can evince some dilatory intent, and the Court infers no such intent from that decision here.

Because of this variability, this factor remains neutral at present but could change as the reexamination proceeds. In light of this, the Court will monitor developments before the USPTO and re-evaluate the appropriateness of a stay depending on the pace and efficiency of that parallel review. In particular, the Court is keen to understand how actively Super Lighting participates in the reexamination in defense of its patents. After all, if a patent owner is unwilling to defend its patents, it can hardly complain that this Court should have afforded it the opportunity to prosecute them. The Court will also monitor the timeliness of that action and the overall pace of the reexamination once the examiners begin to formally evaluate the patents.

### c. Whether the Relationship Between the Parties Weighs Against Granting the Stay

"Courts are generally reluctant to grant a stay in a matter where the parties are direct competitors on the rationale that a stay would likely cause the non-movant to lose substantial profits and goodwill on the market." *Canfield Sci., Inc.*, 2018 WL 2973404, at *3. "Parties are direct competitors when they sell like products to the same market." *Rampart IC, LLC v. Egg Med., Inc.*, No. 24-643, 2025 WL 1100626, at *5 (D. Del. Apr. 14, 2025). "When courts generally find prejudice related to a stay, it is because the parties are directly competing in a specific market, head-to-head, and there is some tangible evidence that a stay will cause harm." *Kirsch*, 2021 WL 2434082, at *3. Importantly, "the fact that the parties are direct competitors in the marketplace does not necessarily translate to undue prejudice for [p]laintiff." *Synchronoss Techs.,*

22

[Docket No. 54]

*Inc. v. Asurion Mobile Applications, Inc.*, No. 11-5811, 2013 WL 1192266, at *5 (D.N.J. Mar. 22, 2013).

Defendant contends "the parties are not one-to-one direct competitors and coexist in a[] crowded tube-lighting manufacturer market with at least ten other key players." [Def.'s Mot. at 8 (citing *LED Lighting Market Size, Share, and Analysis*, MarketsandMarkets, https://www.marketsandmarkets.com/Market-Reports/led-lighting-market-201130554.html) (last visited Apr. 20, 2026).] Plaintiffs, in turn, contend that Obert and Pvtech are direct, one-to-one competitors that comprise more than 40% of the LED tube lighting market share. [Pls.' Opp'n at 10–11.] According to Plaintiffs, "Obert and Pvtech have historically competed, and continue to compete, for some of the same LED tube lighting customers, including, for example, TCP Lighting, PLT Solutions, and Halo Lighting." [*Id.* at 11 (citing Zhou Lan Decl. (Docket No. 57-1) ¶ 6).] Plaintiffs further contend that as a result of this stay, "Obert would face difficulty reconstructing lost sales, erosion of customer trust, and long-term channel displacement during the stay period – all harms for which post-stay damages are inadequate." [*Id.* at 13 (citing *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173, 2013 WL 144255, at *7 (D. Del. Jan. 11, 2013).] Defendant replies that Plaintiffs "exaggerate[]" the parties' role in the lighting industry, and in reality, while Obert and Pvtech compete, they are not one-to-one direct competitors, but are two players among at least ten others. [Def.'s Reply at 12–14.]

The Court finds that this sub-factor weighs against granting the stay because the risk of undue prejudice against Obert, as a direct competitor to Pvtech, is heightened. However, although Obert and Pvtech directly compete for certain customers with certain specific products, it appears that there are other competitors in the market that "undermine[] [Plaintiffs'] assertion of undue prejudice because of loss of market value," which causes some pause in affording this factor too much weight. *Air Vent, Inc. v. Owens Corning Corp.*, No. 10-1699, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012); *see also Canfield Sci., Inc.*, 2018 WL 2973404, at *3 ("The presence of multiple active firms in the relevant market, however, may decrease the likelihood of such harm befalling the plaintiff.").

Moreover, that Plaintiffs have not shown "any actual market loss that would result from a stay" also causes a similar pause. *Kirsch*, 2021 WL 2434082, at *3; *compare Nippon Steel & Sumito Metal Corp. v. POSCO*, No. 12-2429, 2013 WL 1867042, at *5 (D.N.J. May 2, 2013) (whereby Plaintiff submitted supporting declarations showing a 72% loss of market share, specific allegations filed under Rule 11, and translations from other international court proceedings in support), *with A.R. Arena Prods., Inc. v. Grayling Indus., Inc.*, No. 11-1911, 2012 WL 2953190, at *5 (N.D. Ohio June 25, 2012), *report and recommendation adopted*, No. 11-1911, 2012 WL 12892200 (N.D. Ohio Oct. 10, 2012) ("The undersigned observes that [Plaintiff's] assertion it will suffer non-compensable loss of market share is conclusory and unsupported.") *and Smart Vent, Inc. v. USA Floodair Vents, Ltd.*, No. 10-168, 2012 WL 12909887, at *3

24

(D.N.J. Apr. 25, 2012) ("no evidence has been presented that [Defendant] has affected [Plaintiff's] market share to date").

Overall, the Court finds that this second factor concerning undue prejudice and tactical disadvantage weighs slightly against granting the stay.

### E. Whether Discovery is Complete or a Trial Date is Set

Finally, the Court considers whether discovery is complete or a trial date has been set. *Nussbaum*, 2015 WL 5707147, at *3. "This factor weighs against a stay often when the case is in the 'late stage of litigation, [when] discovery was or would be almost completed, or the matter had been marked for trial.'" *Robern, Inc.*, 2017 WL 132841, at *5 (quoting *Mondis Technology Ltd.*, 2015 WL 7012747, at *5).

This case is in its very early stages. [Def.'s Mot. at 13.] Plaintiffs, though they apparently concede this point, assert that this is only because of Defendant's delay tactics, including their purported evasion of service. [Pls.' Opp'n at 19–21.] Defendant replies, however, that Plaintiffs' argument fails because the Court determines what stage the litigation is in, rather than anything prior to filing suit. [Def.'s Reply at 7–9.]

Here, the Court finds this final factor weighs in favor of granting the stay. While the Court finds that both parties had some hand in the delay to date, the relevant inquiry under this factor is how much work remains to be done in this case. The fact is that this litigation remains in its earliest stages: Plaintiffs filed suit in June 2025, the Court set the initial case management schedule in February 2026, and the parties are operating under a February 27, 2027 fact discovery deadline, without a trial date. [Feb.

[Docket No. 54]

2, 2026 Initial Scheduling Order (Docket No. 66).]  With fact discovery at its beginning and no trial date set in the matter, the Court finds this factor weighs in favor of granting the stay.[6]

## V. CONCLUSION

Ultimately, after carefully balancing these factors, the Court concludes that staying this action is appropriate at this stage of the litigation.  Although the Court recognizes the heightened risk of undue prejudice here, the Court ultimately finds that the benefits of staying this case and simplifying the potential issues before the Court outweigh the potential disadvantages to Plaintiffs.

That said, however, the Court remains cognizant that the risk of undue prejudice is likely to increase according to the pace of the reexamination proceedings and the action—or inaction—of the parties.  To that end, the Court shall enter an appropriate Order accompanying this Opinion directing the parties to advise the Court by letter concerning the status of the reexaminations, including whether Plaintiff Super Lighting decides to file any patent owner statement and defend the validity of its Asserted Patents.  The Court will continue to monitor these updates and re-evaluate, as necessary, the appropriateness of continuing the stay.

---

[6]    Because the Court finds a stay is warranted on these bases, it need not and does not address Defendant's additional arguments concerning the first-filed rule or customer suit exception as articulated in its April 14, 2026 letter.  [Def.'s Response (Docket No. 96) at 1–2.]  The Court cautions, however, that all parties must advise the Court regarding other pending litigation, as this implicates concerns of judicial economy and inappropriate forum-shopping.

[Docket No. 54]

/s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge

DATED: <u>April 24, 2026</u>